UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HEATHER HATOUNIAN,

                        Plaintiff,

v.                                              3:15-CV-1194
                                                (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN, GORTON LAW FIRM                         PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 E. Main St.
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                      DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

     This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General

Order 18.

     Currently before the Court, in this Social Security action filed by Heather

Hatounian ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was 20 years old at the time of the hearing. (T. 37.) She completed high school and at the time of the hearing was enrolled as a full time student at a community college. (*Id.*) Generally, Plaintiff's alleged disability consists of cognitive problems, seizures, arterial veinous malformation, speech problems, and problems with her temper. (T. 64.) Her alleged disability onset date is June 3, 2012. (*Id.*) She had no past relevant work. (T. 101.)

### B. Procedural History

On August 27, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 88.) In addition, Plaintiff had not yet attained the age of 22 as of her alleged onset date and applied for benefits as a disabled child. *See* 20 C.F.R. § 404.350. Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 18, 2013, Plaintiff appeared before the ALJ, Jennifer Gale Smith. (T. 33-63.) The ALJ held a supplemental hearing on January 16, 2014 to obtain vocational expert ("VE") testimony. (T. 10-32.) On March 25, 2014, ALJ Smith issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 90-109.) On September 9, 2015, the Appeals Council ("AC") denied Plaintiff's request for review,

rendering the ALJ's decision the final decision of the Commissioner. (T. 1-8.)

Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law. (T. 95-103.) First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since August 9, 2012. (T. 95.) Second, the ALJ found that

Plaintiff had the severe impairments of status-post L5 traverse fracture; history of

arteriovenous malformation, status-post craniotomy; myofascial injury/whiplash

syndrome; seizure disorder; asthma; and depression. (T. 96.) Third, the ALJ found that

Plaintiff did not have an impairment that meets or medically equals one of the listed

impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 96-98.) Fourth,

the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less

than a full range of sedentary work. (T. 98.)[1] Specifically the ALJ found that Plaintiff

could:

> lift and carry up to 10 pounds occasionally and less than 10 pounds
> frequently, sit for six hours in an eight-hour workday, and stand/walk for
> two hours in and eight-hour workday. She should avoid concentrated
> exposure to respiratory irritants such as dust, odors, fumes, and gasses
> and extreme hot and cold, she should not work at unprotected heights or
> in close proximity to dangerous moving machinery or moving mechanical
> parts, and she cannot climb ladders, ropes, or scaffolds. She should only
> occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.
> She should not crawl or work in a job that requires her to operate a motor
> vehicle. She is limited to simple, routine, repetitive tasks in a low-stress
> environment, which is defined as one requiring only occasional decision-
> making, occasional[] changes in the work setting, and occasional

---

[1]     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one
which involves sitting, a certain amount of walking and standing is often necessary in carrying out job
duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria
are met. 20 C.F.R. §§ 404.1657(a), 416.967(a).

judgment.  [Plaintiff] should not perform production pace rate work but can perform goal-oriented work.

(*Id.*)  Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 101-102.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ did not properly consider Plaintiff's deficits in maintaining attention, concentration, and work pace.  (Dkt. No. 12 at 9-15 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the RFC did not properly account for Plaintiff's inability to handle stress.  (*Id.* at 15-17.)  Third, Plaintiff argues the ALJ improperly weighed the opinion of non-examining State agency medical consultant R. Altmansberger.  (*Id.* at 17-19.)  Fourth, Plaintiff argues the ALJ's physical RFC was erroneous because the ALJ did not properly set forth the opinion of the consultative examiner and because the ALJ failed to afford proper weight to Plaintiff's treating source.  (*Id.* at 19-22.)  Fifth, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence.  (*Id.* at 22-23.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues substantial evidence supported the ALJ's mental RFC finding.  (Dkt. No. 13 at 4-9 [Def.'s Mem. of Law].)  Second, Defendant argues that substantial evidence supported the ALJ's physical RFC finding.  (*Id.* at 9-14.)  Third, and lastly, Defendant argues the ALJ properly relied on the VE testimony.  (*Id.* at 14-15.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.     ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed in a consolidated matter.

## A.     The ALJ's RFC Determination

Plaintiff's RFC is the most she can still do despite her limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making an RFC determination, the ALJ will base her determination on an assessment of all the relevant evidence in the case record.  *See id.* Further, Plaintiff's RFC is her maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis.  *See id.* at §§ 404.1545(b)-(c), 416.945(b)-(c).  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).

In formulating an RFC the ALJ will afford weight to the medical opinion evidence in the record.  The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a

specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

### i.) Mental RFC

Here, the ALJ limited Plaintiff to simple, routine, repetitive tasks in a low-stress environment with only occasional decision making, occasional changes in the work setting, and occasional judgment. (T. 98.) Further, the ALJ determined that Plaintiff should not perform production pace rate work, but could perform goal oriented work. (*Id.*) For the reasons stated herein, and outlined in Defendant's brief, the ALJ made her mental RFC determination in accordance with the Regulations and the determination was supported by substantial evidence in the record; therefore, it is recommended that the ALJ's mental RFC determination be upheld.

Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see also* SSR 85-15 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.")

In making her mental RFC determination the ALJ relied on the medical opinion evidence provided by consultative examiner, Cheryl Loomis, Ph.D., the medical opinion evidence provided by Plaintiff's treating sources, Christopher Yanusas, Ph.D. and the medical opinion of non-examining State agency consultant R. Altmansberger. (T. 100-101.) Further, the ALJ relied on objective medical findings of Dr. Yanusas and other evidence in the record, such as Plaintiff's reported activities. (*Id.*)

On October 29, 2012, Dr. Loomis conducted a psychiatric evaluation and provided a medical source statement. (T. 348-352.) On examination, Dr. Loomis observed that Plaintiff was slightly irritable, but cooperative with adequate social skills. (T. 349.) Dr. Loomis described Plaintiff's appearance as "unkempt" and "poorly groomed." (*Id.*) Dr. Loomis noted that Plaintiff had good eye contact, her speech was fluent and clear, her thought processes were coherent and goal directions, her affect was full and appropriate, her mood was dysthymic, and her sensorium was clear. (*Id.*) Dr. Loomis observed that Plaintiff's attention and concentration were intact, her memory was mildly impaired, her intellectual functioning appeared to be average, and her insight and judgment were fair. (T. 350.)

In a medical source statement, Dr. Loomis opined that Plaintiff could follow and understand simple directions and instructions, could perform simple tasks independently, could maintain attention and concentration, could maintain a regular schedule, and could learn new tasks. (T. 350.) Further, Dr. Loomis opined that Plaintiff could not perform complex tasks independently or with supervision. (*Id.*) Dr. Loomis stated Plaintiff could make appropriate decisions and relate adequately with others, but could not appropriately deal with stress. (T. 351.)

Plaintiff's treating psychologist, Dr. Yanusas, provided a medical source statement dated January 24, 2014. (T. 500-501.) Dr. Yanusas opined that Plaintiff had "marked" limitations in her ability to: maintain attention and concentration; perform activities within a schedule, maintain regular attendance and/or be punctual with in customary tolerances; and complete a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 500.)[2]

Dr. Yanusas opined that Plaintiff would have "none/mild" limitation in her ability to interact with others. (T. 500.) He opined that Plaintiff would have a "medium" limitation, defined as "more than slight but less than serious . . . [Plaintiff] is still able to function satisfactorily," in her ability to deal with stress. (*Id.*) Dr. Yanusas indicated that Plaintiff would be "off task" more than 33% of the day and would be absent less than one day per month due to her mental impairments. (T. 501.) Dr. Yanusas wrote that Plaintiff's apathy and inattention would "cause her to work below the expected rate of speed in competitive employment. She wouldn't miss work. She would not do her work well and incur disciplinary action this way." (*Id.*)

Plaintiff argues that the ALJ's mental RFC failed to account for Plaintiff's inability to maintain attention and concentration because the ALJ failed to adopt Dr. Yanusas's opinion and findings. (Dkt. No. 12 at 10-15 [Pl.'s Mem. of Law].)

Here, the ALJ properly evaluated Dr. Yanusas's opinion in accordance with the "treating physician rule" outlined in the Regulations. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ afforded Dr. Yanusas's opinion, that Plaintiff had marked

---

[2]    The form completed by Dr. Yanusas defined "marked" as "a serious limitations in this area. There is a substantial loss in the ability to effectively function the loss would be greater than 33%." (T. 500.)

limitations in attention and concentration "little weight," reasoning that his opinion was contrary to his objective findings. (T. 100.) Substantial evidence supported the weight that the ALJ afforded Dr. Yanusas opinion because it was in conflict with the doctor's clinical notes and with the opinion of Dr. Loomis. *See Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (ALJ provided "good reasons" for affording treating physician limited weight because physician's opinion conflicted with his notes and opinion of consultative examiner). Indeed, Dr. Yanusas observed in June 2012, that Plaintiff was alert and oriented, her thought processes were logical and goal directed, and she was able to follow complex commands. (T. 370.) Where a treating physician's treatment notes did not corroborate the physician's restrictive limitations, and were contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 Fed.Appx. 719, 721 (2d Cir. 2009).

Plaintiff specifically argues that objective testing supported Dr. Yanusas's opined limitations in concentration and attention. (Dkt. No. 12 at 10-11 [Pl.'s Mem. of Law].) As an initial matter, the form completed by Dr. Yanusas did not differentiate between the ability to maintain attention and concentration for simple tasks and the ability to maintain attention and concentration for complex tasks. (T. 500.) The objective medical testing performed by Dr. Yanusas did indicate that Plaintiff had difficulty maintaining focus on tasks. (T. 493.) However, when read in context, the testing indicated that Plaintiff had difficulty on maintaining focus for complex problem solving. (T. 491-493.) Dr. Yanusas performed testing to assess Plaintiff's "executive functioning: complex attention." (T. 491.) In this area of testing Plaintiff's performance fell in the "borderline range,"

suggesting she required "assistance when solving complex problems often encountered in college coursework." (T. 493.) In addition, testing in this area indicated Plaintiff was able to "comprehend simple and complex test instructions including three-step commands." (*Id.*)

Dr. Yanusas stated that overall Plaintiff had "very good immediate memory and learning skills," Plaintiff had "no difficulty recalling [] information during short-term delayed recall (above average range)," and she had no difficulty retaining information over time. (T. 496.) However, Dr. Yanusas observed that Plaintiff had "deficits" in her "higher level problem solving" which would "hinder her efforts in the many tasks involving critical thinking found during college coursework." (T. 497.) Dr. Yanusas stated that Plaintiff's difficulties in higher level problem solving would "significantly reduce her capacity to attend to relevant stimuli and maintain focus and concentration on a consistent bases [and] are exacerbated by the significant fatigue that [Plaintiff] experiences that require her to postpone sustained efforts of higher level thinking." (T. 497.)

Overall, Dr. Yanusus opined that Plaintiff had "moderately impaired focus and complex attention resulting in difficulty with multi-tasking and information processing speed" and "moderately impaired concept-formation that hinders her ability to solve complex problems." (T. 498.) Although Plaintiff had difficulty with concentration when completing "higher level problem solving" and other complex tasks, such limitations are consistent with the ALJ's RFC limiting Plaintiff to simple, routine, repetitive tasks.

Further, Dr. Yanusus's opinion that Plaintiff had marked limitations in her ability to concentrate conflicted with the medical observation of Dr. Loomis. Dr. Loomis

observed that Plaintiff's attention, concentration, and memory were intact. (T. 350.) Therefore, the ALJ afforded good reasons for attributing weight to Dr. Yanusus's opinion and substantial evidence supported the ALJ's mental RFC that Plaintiff could maintain attention and concentration to perform simple, routing, repetitive work.

Plaintiff also argues that the ALJ erred in his mental RFC determination because he failed to properly account for Dr. Loomis's opinion that Plaintiff could not appropriately deal with stress and the ALJ did not explain how he arrived at his RFC determination that Plaintiff could perform low stress work. (Dkt. No. 12 at 15-17 [Pl.'s Mem. of Law].) The ALJ stated that Dr. Loomis's opinion, that Plaintiff could not deal with stress, was inconsistent with Plaintiff's "high level of activity, including participation in college classes" and was inconsistent with Dr. Yanusus's opinion that Plaintiff could follow complex commands. (T. 100.)

It is true that "[r]emand is ... appropriate where ... [a court] is unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision." *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996) (quoting *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982)) (internal quotations omitted); *see also Sweat v. Astrue,* No. 08-CV-1108, 2011 WL 2532932 at *6 (N.D.N.Y. May 23, 2011) (finding that the ALJ's RFC determination not supported by substantial evidence where "[t]he ALJ noted the consultative examiners' findings that Plaintiff would have difficulty dealing with stress, but did not explain how he reconciled those findings with his RFC assessment (which contained no determination regarding stress)"); *James v. Astrue,* No. 09-CV-0424, 2010 WL 5536338, at *6 (N.D.N.Y. May 7, 2010) (recommending remand where "[t]he ALJ 'accepted' [the consultative examiner's]

assessment, but made no attempt to reconcile his conclusion that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently with [the consultative examiner's] determination that Plaintiff had a moderate-to-severe limitation as to lifting").

Here, however, the Court is not unable to fathom the ALJ's rational and substantial evidence in the record supported the ALJ's RFC determination that Plaintiff could perform work in a low-stress environment. (T. 98.) The ALJ thoroughly discussed the opinions of Drs. Yanusus and Loomis and provided reasoning for limiting Plaintiff to low stress work. (T. 100.) Dr. Yanusus opined that Plaintiff could respond appropriately to ordinary stressors in a work setting with simple tasks. (T. 500.) Although Dr. Loomis stated Plaintiff could not appropriately deal with stress, she nonetheless opined that Plaintiff was capable of performing simple, routing, repetitive work. (T. 350-351.) In addition, Plaintiff's testimony supported the ALJ's determination that she could perform "low stress" work. Plaintiff testified that she was enrolled in community college on a full time basis. (T. 13-14.) Plaintiff testified that one semester she did poorly in school; however, that was due to her grandmother's death and she missed classes to take care of her family. (T. 14-15.) Therefore, evidence in the record supported the ALJ's RFC limiting Plaintiff to low-stress work.

Lastly, Plaintiff argues that the ALJ erred in his assessment of Dr. Altmansberger's opinion. (Dkt. No. 12 at 17-19 [Pl.'s Mem. of Law].) Dr. Altmansberger reviewed the record on November 13, 2012. (T. 75.) In a mental RFC assessment, Dr. Altmansberger opined that Plaintiff had "moderate" limitations in her ability to: understand and remember detailed instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances; and work in coordination with in proximity to others without being distracted by them.  (T. 73.)  The ALJ afforded Dr. Altmansberger's opinion "some weight" and stated that his review of the record indicated Plaintiff had "no more than moderate limitations."  (T. 101.)  Plaintiff argues that the ALJ erred in his assumption that "moderate" limitations are insignificant.  (Dkt. No. 12 at 17 [Pl.'s Mem. of Law].) Plaintiff's argument is without merit.

First, Dr. Altmansberger opined Plaintiff had moderate limitations in performing complex work and the ALJ limited Plaintiff to simple work.  Second, moderate limitations do not preclude the ability to perform unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined her indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment."). Therefore, the ALJ did not err in his assessment of Dr. Altmansberger's opinion.

It is recommended that the ALJ's mental RFC determination be upheld. The ALJ properly assessed the medical opinion evidence and his mental RFC determination was supported by substantial evidence in the record.

### ii.) Physical RFC

Here, the ALJ limited Plaintiff to less than a full range of sedentary work. (T. 98.) In making his physical RFC determination, the ALJ relied on the medical opinions of consultative examiner, Shannon Gearhart, M.D. and treating source Sajid Kahn, M.D. (T. 100.)

On October 29, 2012, Dr. Gearhart performed physical examination of Plaintiff and provided a medical source statement. (T. 342-347.) On examination, Dr. Gearhart observed that Plaintiff had a normal stance and gait, slight difficulty walking on heels and toes, full squat, and was able to change and get on and off the exam table without assistance. (T. 344.) A musculoskeletal examination indicated that Plaintiff had full range of motion in her cervical spine. (T. 345.) Plaintiff had reduced range of motion in her lumbar spine. (*Id.*) Plaintiff had full range of motion in her upper and lower extremities. (*Id.*) On examination, Plaintiff had full strength in her upper and lower extremities and no sensory deficits. (T. 346.)

In a medical source statement, Dr. Gearhart opined that Plaintiff had "moderate restrictions for heavy lifting and carrying. . . mild-to-moderate restrictions for prolonged walking, standing, and sitting." (T. 346.) Dr. Gearhart opined that Plaintiff should avoid smoke, dust, and other known respiratory irritants, should avoid operating machinery or motor vehicles, and should avoid activities requiring unprotected heights or balance. (*Id.*)

On August 26, 2013, Plaintiff's treating source, Dr. Kahn, completed a questionnaire. (T. 421-422.) Dr. Kahn stated Plaintiff suffered from chronic low back pain. (T. 421.) Dr. Kahn checked the box indicated Plaintiff required "one 10 minute rest period per hour or less." (*Id.*)[3] Dr. Kahn indicated "yes" when asked if Plaintiff's condition would result in four or more absences from work a month. (*Id.*) Dr. Kahn indicated that Plaintiff's medication would have a mild effect on her concentration and ability to sustain work pace. (*Id.*)

Dr. Kahn opined that in an eight hour workday, Plaintiff could sit for six out of the eight hours. (T. 422.) He opined Plaintiff would need to alternate sitting/standing every hour. (*Id.*) Dr. Kahn opined that Plaintiff could stand/walk for two hours in an eight hour workday. (*Id.*) Dr. Kahn indicated that Plaintiff could lift/carry up to 10 pounds up to eight hours a day and over 10 pounds up to three hours a day. (*Id.*)

The ALJ afforded Dr. Gearhart's opinion "great weight" reasoning it was based on her thorough exam, she has extensive program expertise, and the opinion was consistent with her objective findings. (T. 100.) The ALJ afforded Dr. Kahn's statement "some weight" reasoning that the limitations regarding the need for rest and absences were speculative and not supported by the record. (*Id.*)

Plaintiff argues that the ALJ erred in his physical RFC determination regarding Plaintiff's restrictions to respiratory irritants. (Dkt. No. 12 at 19-20 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ substituted his own lay judgment because Dr.

---

[3] The form completed by Dr. Kahn provided the following options regarding "rest periods:" 1) one 10 minute rest period per hour or less, 2) more than one 10 minute rest period per hours, 3) none of the above is satisfactory, patient requires complete freedom to rest frequently without restriction. (T. 421.)

Gearhart opined Plaintiff should avoid respiratory irritants, not "concentrated" respiratory irritants as stated in the RFC. (*Id.*)

Plaintiff's argument, that the ALJ must conclude that she avoid all respiratory irritants, was similarly rejected in *Wheeler v. Comm'r of Soc. Sec.,* No. 3:15-CV-105, 2016 WL 958595 (N.D.N.Y. Mar. 7, 2016). In *Wheeler*, as in the instant case, plaintiff argued that the ALJ erred in finding plaintiff must avoid concentrated exposure to respiratory irritants, although a doctor whose opinion the ALJ afforded significant weight to opined that plaintiff should avoid smoke, dust and other respiratory irritants. *Wheeler*, 2016 WL 958595, at *9. Here, as in *Wheeler*, plaintiff interpreted the doctor's opinion to mean that plaintiff must avoid "all" exposure to respiratory irritants. *Id.* However, the *Wheeler* court did not agree with plaintiff's argument and the ALJ's finding that plaintiff should avoid concentrated exposure to respiratory irritants was supported by the record. *Id.*

As in *Wheeler*, the ALJ's determination, that Plaintiff should avoid concentrated respiratory irritants, was supported by substantial evidence in the record. First, Plaintiff reported to Dr. Gearhart that she was diagnosed with asthma in 2002 and gets shortness of breath when walking uphill one to two blocks. (T. 343.) Plaintiff reported that she had not needed to use her inhaler since June of 2012, four months before Dr. Gearhart's examination. (*Id.*) Second, although Plaintiff's diagnosis of asthma was listed throughout her medical record, the record does not contain any treatment for asthma other than medication renewals. (*See generally* T. 453-469.) Therefore, substantial evidence supported the ALJ's RFC determination that Plaintiff should avoid "concentrated" exposure to respiratory irritants.

Plaintiff next argues that the ALJ failed to explain why he did not accept Dr. Kahn's opinion that Plaintiff needed to change positions once every hour. (Dkt. No. 12 at 20-22 [Pl.'s Mem. of Law].) In his determination, the ALJ acknowledged Dr. Kahn's opinion that Plaintiff would need to change positions every hour. (T. 100) The ALJ concluded that Dr. Kahn's opinion regarding Plaintiff's need for rest periods and absences were speculative and not supported by the record. (*Id.*)

Plaintiff essentially argues that the ALJ was not sufficiently explicit in her rationale for discounting Dr. Kahn's opinion that Plaintiff would need to change position. However, the Second Circuit has held that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (*quoting Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (internal citations omitted).

Although the ALJ did not provide an specific analysis of Dr. Kahn's opinion that Plaintiff would need to change position every hours, substantial evidence in the record supported the ALJ determination that Plaintiff could sit for six hours in and eight hour workday. The ALJ considered Dr. Kahn's report in which he indicated Plaintiff would need to alternate positions every hour. (T. 100.) The ALJ discussed the reported in detail and concluded that it was entitled to "some weight." (*Id.*)

Dr. Kahn ultimately opined that Plaintiff could sit for six hours in and eight hour workday and Dr. Gearhart opined Plaintiff had "mild-to-moderate" restrictions in prolonged sitting. (T. 346, 422.) In addition, Plaintiff testified that she could "sit for an extended period of time" and specifically that she could sit for two hours at a time before

she had to stand up and move.  (T. 43, 48.)  Therefore, the ALJ's physical RFC was supported by substantial evidence in the record.

The ALJ's mental and physical RFC determinations were made in accordance with the Regulations and supported by substantial evidence in the record.  For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's physical, as well as mental, RFC determination be upheld.

### B.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Because Plaintiff had additional significant non-exertional impairments the ALJ relied on the testimony of a VE in making her step five determination.  (T. 18-31.)  The ALJ presented a hypothetical to the VE based on an individual with Plaintiff's RFC and vocational profile.  (T. 22-25, 101-102.)

Plaintiff argues that the ALJ erred in her reliance on the VE's testimony because it was based on a flawed RFC determination.  (Dkt. No. 12 at 22-23 [Pl.'s Mem. of Law].)  Because we find no error in the ALJ's RFC assessment, we likewise conclude

that the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

 **RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

 Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  January 12, 2017

              William B. Mitchell Carter
              U.S. Magistrate Judge